**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **JUSTIN BANKS,** <br> **Plaintiff,** <br> **v.** <br> **MASSACHUSETTS DEPARTMENT OF CORRECTION,** <br> **Defendant.** | ) | **Civil Action No. 24-13163-BEM** |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**MURPHY, J.**

Plaintiff Justin Banks, a former correction officer who was employed by Defendant, the Massachusetts Department of Correction (the "DOC"), brings this case following his 2021 termination for failure to comply with the DOC's COVID-19 vaccination mandate, after Plaintiff's request for a religious exemption was denied. Plaintiff claims that his termination constituted religious discrimination in violation of Title VII, Mass. Gen. Laws ch. 151B, and the First Amendment. The undisputed factual record clearly establishes that granting Plaintiff an exemption from the vaccine requirement would have constituted an undue hardship on the DOC. Accordingly, the Court will grant Defendant's motion for summary judgment.

## I. Factual & Procedural Background

Except as noted, the following facts are undisputed and are detailed in the parties' consolidated statement of material facts. Dkt. 21 ("SMF").

COVID-19 is an infectious, contagious, viral disease that can cause serious illness, hospitalization, and death. *Id.* ¶ 1. Symptoms of long-term COVID-19 include fatigue, shortness

of breath, and cognitive dysfunction. *Id.* ¶ 3. By August 19, 2021, the Massachusetts Department of Public Health had recorded approximately 18,000 deaths from COVID-19. *Id.* ¶ 2. Among those deaths were incarcerated individuals in custody of the DOC. *Id.* ¶ 23.

In the fall of 2021, the COVID-19 pandemic was a severe public health emergency, deemed a "disease dangerous to the public health" pursuant to Mass. Gen. Laws ch. 111, § 6. *Id.* ¶ 4. In September 2021, to combat the pandemic, Governor Charlie Baker signed Executive Order 595 ("EO 595"), which required all Massachusetts executive-department employees to "demonstrate no later than October 17, 2021 . . . that they have received COVID-19 vaccination." Dkt. 19-6 at 3. By the time EO 595 was issued, the Food and Drug Administration (the "FDA") had approved three vaccines for COVID-19. SMF ¶ 10. EO 595 noted that those vaccines were "safe and effective, as evidenced by the fact that COVID-19 vaccines have satisfied the [FDA's] rigorous scientific standards for safety, effectiveness and manufacturing quality." Dkt. 19-6 at 2. EO 595 further determined that the "COVID-19 vaccine is a proven measure at preventing hospitalization and severe disease" and that full vaccination among executive department employees was "necessary to ensure that the executive department can provide the full measure of public services due to the residents of the Commonwealth." *Id.* at 3; *see also* SMF ¶ 25. EO 595 also outlined a process through which employees could seek a religious or medical exemption to the vaccination requirement. SMF ¶ 27.

During this time, Plaintiff worked as a Correction Officer I at the Massachusetts Correctional Institution–Norfolk ("MCI-Norfolk"), a DOC facility. *Id.* ¶ 65. The DOC is an executive department agency tasked with overseeing the Massachusetts state prison system. *Id.* ¶¶ 34–36. In his role, Plaintiff was responsible for "maintaining custodial care and control" of individuals in DOC custody. *Id.* ¶ 66. This required conducting head counts and security checks;

escorting, transporting, and searching incarcerated individuals; performing regular searches of the belongings and housing units of incarcerated individuals; responding to medical emergencies; screening visitors; and serving food. *Id.* ¶¶ 37, 66. Plaintiff's role was in-person and required frequent direct physical contact with incarcerated individuals, fellow employees, and members of the public. *Id.* ¶ 76.

On or about September 26, 2021, Plaintiff submitted a request for a religious exemption from the vaccination requirement of EO 595. *Id.* ¶ 71. In his vaccination exemption request form, Plaintiff, a practicing Catholic, stated in part:

> In addition to teaching me that my body is the temple of God, the Bible also teaches me about the sanctity of life, specifically t life begins at conception and that I must not endorse the killing of human life by anything I participate in. . . . It is my understanding that all of the COVID vaccines contain cell lines or utilized cell lines derived from aborted human beings in their manufacture and testing. It is my sincere belief that for me to benefit from the murder of innocent human life is immoral and a sin. Even if the safety and efficacy of the vaccines were certain and the danger of the disease great, I cannot in good conscience receive a COVID vaccine. After considering the risks, benefits, alternatives, the use of aborted fetal cell lines, as well as my personal health condition, I have taken the matter to the Lord in prayer and am convicted that I should not take the vaccine and that to do so would violate my conscience.

Dkt. 19-16 at 5.

On November 30, 2021, Plaintiff was suspended for five days for failing to provide proof of vaccination. SMF ¶ 78; *see also* Dkt. 19-19 at 1. On December 7, 2021, Plaintiff was suspended for another ten days for failing to provide proof of vaccination. SMF ¶ 79; *see also* Dkt. 19-20 at 1. On December 22, 2021, Plaintiff was terminated for failing to comply with EO 595. SMF ¶ 80; *see also* Dkt. 19-21.

Plaintiff filed his complaint on December 20, 2024.[1] Dkt. 1. He brings two claims: religious discrimination in violation of Title VII and Mass. Gen. Laws 151B (Count I), *id.* ¶¶ 24–32, and religious discrimination in violation of the First Amendment pursuant to 42 U.S.C. § 1983 (Count II), *id* ¶¶ 33–39. Following discovery, the DOC filed a motion for summary judgment on both claims on August 13, 2026. Dkt. 18.

## II. Legal Standard

Summary judgment will only be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Grogan v. All My Sons Bus. Dev. LLC*, 552 F. Supp. 3d 142, 145 (D. Mass. 2021) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "To succeed [on a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Grogan*, 552 F. Supp. 3d at 145 (quoting *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990)).

The Court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009). However, "[t]he nonmoving party cannot fend off summary judgment unless it makes a competent demonstration that *every essential element* of its claim or defense is at least trialworthy." *Price v. Gen. Motors Corp.*, 931 F.2d 162, 164 (1st Cir. 1991) (emphasis in original). "Where the

[1] Plaintiff filed his complaint with another co-plaintiff, Joseph Schnupp. *See generally* Dkt. 1. In a joint status report filed on March 30, 2026, the parties reported that Schnupp had settled his case, leaving Banks as the sole plaintiff. *See* Dkt. 14.

non-moving party bears the ultimate burden of proof, the non-moving party 'must present definite, competent evidence to rebut the motion.'" *Satanic Temple, Inc. v. City of Bos.*, 684 F. Supp. 3d 21, 30 (D. Mass. 2023) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991)), *aff'd*, 111 F.4th 156 (1st Cir. 2024).

## III. Discussion

### A. Count I: Religious Discrimination

Plaintiff alleges that his termination constituted religious discrimination in violation of Title VII and Mass. Gen. Laws ch. 151B. Dkt. 1 ¶¶ 24–32. At the outset, the Court notes other former DOC employees terminated for failing to abide by the COVID-19 vaccine mandate have previously brought identical claims in this District. *See, e.g.*, *Andrade v. Mass. Dep't of Corr.*, 2025 WL 319563 (D. Mass. Jan. 13, 2025) (granting summary judgment for the DOC) *appeal docketed*, No. 25-1094 (1st Cir. Jan. 28, 2025); *Buchanan v. Mass. Dep't of Corr.*, 2024 WL 5202787 (D. Mass. Dec. 23, 2024) (same); *Howe v. Mass. Dep't of Corr.*, 2024 WL 3536830 (D. Mass. July 25, 2024) (same).[2] All have failed and, upon review of the factual record in this case, so too does Plaintiff.

The First Circuit applies a "two-part framework in analyzing religious discrimination claims under Title VII."[3] *Lowe v. Mills*, 68 F.4th 706, 719 (1st Cir. 2023) (quoting *Sánches-Rodríguez v. AT & T Mobility P.R., Inc.*, 673 F.3d 1, 12 (1st Cir. 2012).

> First, a plaintiff must make his prima facie case that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse

---

[2] Tellingly, Plaintiff does not distinguish his case from these other cases in his opposition.

[3] "Religious discrimination claims under Title VII and Chapter 151B are generally analyzed under the same framework. Because [Plaintiff] points to no difference between the statutes that affects the analysis in this case, the Court analyzes both claims under the Title VII framework." *Cyr v. Bos. Med. Ctr.*, 2025 WL 269239, at *4 n.3 (D. Mass. Jan. 22, 2025) (citation omitted); *see also Rodrique v. Hearst Commc'ns., Inc.*, 126 F.4th 85, 90 n.1 (1st Cir. 2025) ("treat[ing] the claims as rising and falling together" where "neither party ha[d] identified relevant differences between religious discrimination claims under Title VII and Chapter 151B, nor provided any analysis specific to Chapter 151B").

> employment action. The burden then shifts to the employer to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship.

*Melino v. Bos. Med. Ctr.*, 2024 WL 2724145, at *1 (D. Mass. May 28, 2024) (internal quotation marks omitted).

The DOC moves for summary judgment on both prongs. First, it argues that Plaintiff failed to establish a sincere religious belief. Dkt. 19 at 7–9. Plaintiff's own stated justifications for refusing the COVID-19 vaccines, the DOC claims, are unsupported by any of the "Catholic [C]hurch's writings." *Id.* at 9. Plaintiff argues that he did assert a sincere religious belief, consistent with his faith. Dkt. 20 at 2–4. Determining whether a religious belief is sincere is a "'difficult and delicate task,' one to which the courts are ill suited." *Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 132 (1st Cir. 2004) (quoting *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981)). However, because the undue hardship prong is independently dispositive, "this case does not require [the Court] to grapple with this difficult issue." *Rodrique v. Hearst Commc'ns., Inc.*, 126 F.4th 85, 90 (1st Cir. 2025). The Court therefore assumes, without deciding, that Plaintiff's religious objection to the COVID-19 vaccine was sincere.

The DOC's second argument for summary judgment is that granting Plaintiff an exemption from the vaccine requirement would have resulted in undue hardship. Dkt. 19 at 9–17. Undue hardship "is shown when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). The factual record clearly establishes that permitting Plaintiff to continue to work at MCI-Norfolk while unvaccinated would have created a substantial burden for the DOC.

As in prior cases, the undisputed record indicates that accommodating Plaintiff's exemption request would have "increased DOC's economic costs, primarily through lost staff

hours and increased overtime," and "pose[d] substantial health and safety risks to inmates and coworkers." *Howe*, 2024 WL 3536830, at *5–6; *see also Buchanan*, 2024 WL 5202787, at *4–6 (holding that a COVID-19 vaccine accommodation would pose a "substantial health and safety risk[]" to fellow staff and incarcerated individuals, making it an undue hardship on the DOC). Plaintiff's job responsibilities primarily included in-person interactions with incarcerated individuals and other staff. SMF ¶ 66. Incarcerated populations were at significant risk of COVID-19 infection. *Mass. Corr. Offs. Fed. Union v. Baker*, 567 F. Supp. 3d 315, 327 (D. Mass. 2021) (noting that "[c]ongregate facilities like prisons are particularly high-risk environments for COVID-19"). From March 20, 2020, to December 11, 2023, there were 6,182 COVID-19 cases among incarcerated individuals and 21 COVID-19-related deaths in the DOC's facilities. SMF ¶ 51. Here, the parties agree that the vaccine requirement was "a critical component of DOC's efforts to ensure safe access to the desperately needed services and supports DOC provides," *id.* ¶ 53, and that the DOC possessed "a compelling penological interest in attempting to maintain adequate staffing levels in its facilities during the pandemic in a manner that [incarcerated individuals] and staff can trust will keep them safe from acquiring COVID-19," *id.* ¶ 55.

Plaintiff also emphasizes that the DOC utilized masking, social distancing, and testing as preventative measures *before* the widespread availability of vaccines—and argues that allowing him to continue with those methods would have constituted a reasonable accommodation that would not pose an undue hardship. Dkt. 20 at 7; *see also* SMF ¶¶ 41–42 (detailing the pre-vaccine precautions undertaken by the DOC). But by the fall of 2021, the DOC determined that masking and frequent testing would not provide the same protection as the newly available vaccines. SMF ¶ 68; *Howe*, 2024 WL 3536830, at *5–6 (finding a mask and COVID-19 testing accommodation for a correctional officer would pose an undue hardship on the DOC because of increased

economic costs and the "particularly high" health and safety risk in maximum-security prisons); *see also Andrade*, 2025 WL 319563, at *4 ("Based on information available at the time, the vaccine was shown to be more effective than non-pharmaceutical interventions in reducing COVID-19 health risks. Thus, without the vaccine, plaintiff posed a heightened health risk to his colleagues and the incarcerated population with whom he interacted as part of his job on a regular basis."); *see also LaFreniere v. Spectrum Health Sys., Inc.*, 2025 WL 2793761, at *7 (D. Mass. Sept. 30, 2025) (explaining unvaccinated staff at the DOC pose a "significant threat to public safety and health" and an exemption would constitute an undue hardship for the DOC). Accordingly, the Court finds that providing Plaintiff a religious exemption would have constituted an undue hardship.

In an effort to undermine the DOC's undue hardship claims, Plaintiff disputes, at every turn, the FDA's, the Centers for Disease Control and Prevention's ("CDC"), and the broader scientific community's conclusion that the COVID-19 vaccine was generally safe and efficacious. SMF ¶¶ 8–10, 13–16, 18–21, 67–68, 76, 81. In support of his claims, he introduces an expert report by Dr. Peter McCullough contesting the efficacy and safety of the vaccines.

But the key question is not whether EO 595—and the DOC's policy implementing that directive—was correct in its assertion that the "COVID-19 vaccines are safe and effective." Dkt. 19-6 at 2. Instead, "what matters for the purposes of the undue-hardship analysis is whether [the DOC] reasonably relied 'on the objective, scientific information available to [it]' when determining that 'vaccinated employees are less likely to transmit COVID-19 than unvaccinated employees.'" *Curtin v. Cambridge Health All.*, 2026 WL 1459788, at *7 (D. Mass. Apr. 10, 2026) (quoting *Rodrique*, 126 F.4th at 91), *appeal docketed*, No. 26-1542 (1st Cir. May 11, 2026). By that standard, "the record is replete with undisputed evidence that [the DOC] reasonably relied on

objective medical evidence, including public health guidance from the federal government and the Commonwealth of Massachusetts," when it implemented EO 595. *Rodrique*, 126 F.4th at 92. The parties agree that the Governor "determined that the increased risk of COVID illness in the absence of vaccination would result in operational hardships in providing critical services to the public." SMF ¶ 33. EO 595 explicitly stated the vaccine requirement was based upon the FDA's approval of the vaccines and its "rigorous scientific standards for safety, effectiveness, and manufacturing quality." Dkt. 19-6 at 2; *see also* Dkt. 19-3 at ¶ 16 ("The FDA reviewed extensive safety data on each of the vaccines prior to authorizing its use and deemed them safe. . . . All three vaccines have also been found to be safe by the World Health Organization and numerous other national and regional public health agencies."). In implementing EO 595, the Commonwealth repeatedly referenced CDC and Department of Public Health recommendations. Dkt. 19-13 at 1–2.[4] Courts have long held that recommendations from public health authorities like the FDA, the CDC, and the Massachusetts Department of Public Health constitute objective medical evidence of "special weight and authority." *Rodrique*, 126 F.4th at 92 (quoting *Bragdon v. Abbott*, 524 U.S. 624, 650 (1998)). It therefore cannot be disputed that the Governor's Executive Order, and the DOC's subsequent implementation of that order, was based on the objective, scientific information available to it.

It is therefore not necessary to consider McCullough's theories, which challenge the efficacy of the vaccine—though the Court will, as other courts have, briefly address certain

[4] The CDC's COVID-19 vaccine safety website, last updated on January 31, 2025, currently states that the "COVID-19 vaccines underwent the most intensive safety analysis in U.S. history" and they "continue to meet FDA's standards for safety *and effectiveness*." Centers for Disease Control & Prevention, CORONAVIRUS DISEASE 2019 (COVID-19) VACCINE SAFETY, Jan. 31, 2025 [https://perma.cc/NGF9-VBGQ] (last visited Oct. 21, 2026) (emphasis added).

"glaring issues" with his report.[5] *Curtin*, 2026 WL 1459788, at *7. McCullough is, at this point, a known quantity in the federal court system and, as in other cases, his report here "is filled with conclusory medical claims that are not supported by reliable scientific evidence." *Id.* at *8. For example, McCullough claims, without support, that "[t]here has been no valid study demonstrating clinical benefit of COVID-19 vaccination in those who have had well documented or even suspected prior COVID-19 illness." Dkt. 20-1 at 21–22. Throughout the report, he "does not actually provide any unique methodology, does not discuss whether [most of] the studies he cites have been subject to peer review, does not discus error rates of the studies, and does not discuss the general acceptance of any methodology." *Slattery v. Main Line Health, Inc.*, 2025 WL 897526, at *9 (E.D. Pa. Mar. 4, 2025). Moreover, many of the studies he cites were published *after* the implementation of EO 595. *See e.g.*, Dkt. 20-1 at 24 (citing an October 2022 study of infections in prisons); *id.* at 19 (citing studies from October 2021, February 2022, March 2022, and September 2022). In addition, McCullough advances many preposterous and obviously erroneous claims including that "more Americans died of COVID-19 vaccination than from SARS-CoV-2 infection." Dkt. 20-1 at 39.[6]

"Based on the unreliability of McCullough's expert report," the court in *Curtin* "join[ed] several other district courts that have declined to rely on his opinions regarding the COVID-19 vaccine." *Curtin*, 2026 WL 1459788, at *8 (collecting cases); *see also Slattery*, 2025 WL 897526,

[5] Even in the absence of an objection, District Courts must "perform a gatekeeping role in regulating the admission of expert testimony under Federal Rule of Evidence 702." *United States v. Diaz*, 300 F.3d 66, 73 (1st Cir. 2002); *see also United States v. Phillipos*, 849 F.3d 464, 471 (1st Cir. 2017) (district court not required to hold a hearing to make a reliability determination of a proffered expert). "Before according weight to the expert testimony, the trial court must first perform a gatekeeping function to determine whether the expert is qualified and whether the expert's testimony is sufficiently reliable and 'relevant to the task at hand.'" *In re Pharma. Inds. Avg. Wholesale Price Litig.*, 491 F. Supp. 2d 20, 85 (D. Mass. 2007) (quoting *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993)).

[6] As of the week ending on October 10, 2026, the CDC has recorded more than 1.2 million deaths attributed to COVID-19. National Center for Health Statistics, PROVISIONAL COVID-19 MORTALITY SURVEILLANCE, Oct. 15, 2026 [https://perma.cc/WR6E-KZ5U].

at *9 ("It is not the Court's job to search for the reliability of [McCullough's] methods through piecemeal articles cited to support conclusions that veer far from main-stream science, and more importantly veer far from the guidance available to [d]efendants at the time of their decision to terminate [p]laintiff."); *see also Roth v. Austin*, 603 F. Supp. 3d 741, 772 (D. Neb. 2022) (declining to credit McCullough's testimony because he "is hardly a 'real expert' in the field" of COVID-19 vaccines); *see also Navy SEAL 1 v. Austin*, 600 F. Supp. 3d 1, 16 (D.D.C. 2022) (determining that McCullough's opinions on the COVID-19 vaccines were "outside the scientific mainstream"), *vacated and remanded on other grounds*, 2023 WL 2482927 (D.C. Cir. Mar. 10, 2023)). Finding its sister courts persuasive, this Court will follow suit and not consider the McCullough report.

**B. <u>Count II: First Amendment Violation</u>**

Plaintiff also brings a claim under 42 U.S.C. § 1983 ("section 1983") for violation of his rights under the First Amendment. But section 1983 precludes Plaintiff's claim. The DOC, a state agency, is the only defendant in this case. "State agencies are not persons subject to liability under § 1983 and the doctrine of sovereign immunity bars suits brought in federal court asserting claims under § 1983 against states, their agencies, and their employees sued for acting in their official capacities." *Pollock v. Berkshire Cnty. Jail and House of Corr.*, 786 F. Supp. 3d 288, 293 (D. Mass. 2025) (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 64–66, 71 (1989)). Even still, to the extent Plaintiff raises a *broader* First Amendment claim against the DOC not under section 1983, his claim fails for substantially the same reasons as his Title VII claim.

The Free Exercise Clause of the First Amendment "'protects religious observers against unlawful treatment' and against 'laws that impose special disabilities on the basis of religious status.'" *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 475 (2020) (quoting *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 458 (2017)). "A facially neutral and generally applicable policy that 'incidentally burdens free exercise rights' does not violate the First

Amendment 'if it is rationally related to a legitimate governmental interest.'" *Brox v. Woods Hole*, 706 F. Supp. 3d 151, 156–57 (D. Mass. 2023) (quoting *Does 1–6 v. Mills*, 16 F.4th 20, 29 (1st Cir. 2021)). This analytical framework is known as rational basis review.

The parties agree that EO 595 and the DOC's implementing regulations are facially neutral and generally applicable and, therefore, that rational basis review applies. *See* Dkt. 20 at 11. Plaintiff does not even dispute that the DOC had "a legitimate interest in reducing the spread of COVID-19 among staff and incarcerated individuals." *Id.* Plaintiff's sole objection is that mandating vaccination against COVID-19 was not rationally related to reducing the spread of COVID-19. *Id.*

For the same reasons articulated above, *see supra* Section III.A, Plaintiff's argument falls short. There is no genuine dispute that, based on the objective medical data available to state officials, requiring vaccination for DOC employees was rationally related to the Commonwealth's legitimate interest in reducing the spread of the disease. The DOC's motion for summary judgment on Count II is granted.

## IV. <u>Conclusion</u>

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court

Dated: October 21, 2026